Good morning, Mr. Garrity. May it please the Court, my name is Paul Garrity. I represent Joshua Dunfee. The brief I filed did contain a sentencing issue, but if I could I'd like the rest of my brief on that issue and instead focus on what I consider to be the main issue in this case is Mr. Dunfee's motions to withdraw his guilty plea and whether or not he was entitled to a hearing on those motions. His initial motion to withdraw a guilty plea that he filed shortly after he told the Court on June 3, 2014 that he wished to withdraw his guilty plea conceitually did not include a request for a hearing. His later request that he filed in October of 2014 had repeated requests for a hearing and had more detailed pleadings involved. I know the government in their brief has basically brushed that pleading aside and has relied on what Judge Saris said in the beginning of October when Mr. Dunfee was appointed new counsel where Judge Saris said she was not going to address motions that involved issues on items prior to the plea. Maybe I'm cutting fine hairs here, but she did not say at that time she would not address issues with respect to what took place during the plea proceeding and in fact did address the pleading that he did file subsequent to that hearing. I think he filed it October 28, 2014 and that's the pleading where he on at least four or five occasions by my count requested a hearing, an evidentiary hearing to address the issues he laid out and included the number of witness statements and gave a much more detailed explanation as to what he said were the issues that undercut the validity of his plea that he entered back in March of that year. And I think interestingly Judge Saris struck other pleadings that he filed subsequent to getting new counsel involved, but she did address this issue. She did the motion to set aside the guilty plea. She didn't give any explanation, but she denied it. It gives some indication that she considered it and denied it as opposed to the other motions that she struck without even addressing. I think his, if you look at the two motions to withdraw his guilty plea in combination, they lay out a fair and just reason to withdraw the guilty plea or at the very least to give Mr. Dunfee an evidentiary hearing where he could present his claims in much more detail. Isn't the second motion in effect a motion to reconsider? And if so, then wouldn't the standard we apply would be whether you're entitled to a hearing upon demand on a motion to reconsider as opposed to the original motion? I think Judge, it could be fairly read to be a motion to reconsider, but even if it were to be looked at as a motion to reconsider, given the circumstances of this case, I would think that he was entitled to a hearing on that motion. If you read the pleadings, and although it's not explicitly stated, I think inferentially you can determine that Mr. Dunfee was having difficulty getting materials from his trial counsel. He refers to that someone in his first motion to withdraw, and he states that in the one he filed subsequently. He was imprisoned. It hampered his ability to get the materials that he needed to lay out in detail what his issues were in his initial motion to withdraw, but after he was given an opportunity to get the materials, reached out to some witnesses that he thought were unavailable to him in Iowa, he was able to supplement that in much more detail when he filed a subsequent plea. So even if you did look at that second motion as a motion to reconsider, I think given the circumstances, one that should have been considered by Judge Saris and should have entitled Mr. Dunfee to an evidentiary hearing where he could have addressed in much more detail what he claims were the problems with entering the guilty plea. If it is a motion to reconsider, then what's the standard that applied to Judge Saris' adjudication of that motion, and what standard, wouldn't it be at best abuse of discretion, or discretionary call, and then we would review for abuse of discretion? I think, Judge, I think it would be for abuse of discretion, but if you did look at it, even under that standard, not providing him with an evidentiary hearing wasn't abuse of discretion. He gave some pretty detailed explanations as to why, what he thought the normally did his trial counsel tell him he has to plead, which conceivably I've done in my practice. You know, so the evidence is overwhelming, but in combination with that admonishment from his trial counsel, he's claiming that trial counsel hid from him exculpatory evidence, namely evidence that would show he wasn't using an adult pornography site, and witnesses that could have been available to him in Iowa. Wasn't that evidentiary fact sort of found to be really more than speculative, that there was no real corroboration for any of the things that he was claiming, for instance, about his, whether he had been in the place at the time it happened, and the so-called witnesses weren't able to, didn't really know? Didn't the judge factor all that in? Well, I think that, and obviously I can't read what Judge Cyrus' mind, but I think my reading of it is the witnesses that testified at an earlier detention hearing were the main focus of the motion to withdraw a guilty plea, whereas the real focus should have been on the witnesses he laid out in his October motion to withdraw. There, his mother gave a pretty robust question here, where she said he wasn't there, didn't spend a lot of time there, and his stepfather said that as well. That sort of evidence, if presented, could have raised a reasonable doubt as to whether, in combination with the other witnesses that testified at detention, could have raised a reasonable doubt as to whether he was present on the time in question. So it was more than speculation looking at that later motion. One of the factors Judge Cyrus was required to look at was the strength of the case against him. As I understand it, in addition to all the evidence linking his computer that was in his house, as I understand it, he confessed to the essential facts twice, once when he was arrested and given Miranda warnings, and then secondly at the change of plea hearing. Given those detailed confessions, couldn't the judge, without abusing her discretion, conclude there's overwhelming evidence of guilt here? Certainly, Judge, a confession doesn't help Mr. Dunphy's case, but he disputed that confession at the suppression hearing. It's a pretty clear detail. There was the issue with the late disclosure of the interview notes. The interview wasn't tape recorded. So whether or not a defense saying that he never gave that statement would be plausible and acceptable to a jury, obviously that's open to question, but at least there was some basis to make a claim that he never gave the statement, and that absent the statement, and in combination with the newly discovered evidence he claims he received after his plea, that an adult pornography site wasn't even in existence at the time in question, that could have raised a reasonable doubt, along with his witnesses who would testify he wasn't present at the home at the time that this interaction with the child took place. So I would submit it would not be maybe the greatest defense, but it was a plausible defense. It was not incredible. It was not totally beyond the bounds of imagination that a jury could have had a reasonable doubt as to his guilt if he was allowed to present this evidence of the adult pornography site not being in existence, and these other witnesses that would say he wasn't present. But what we're trying to figure out is whether his plea originally was the product of his own choice, such that he's bound by it. Right. Because he can bring a 2255 afterwards if he wants to challenge it on these grounds. So I guess what about the additional evidence that's put forward here would lead us to abuse your discretion in concluding that the initial plea, given all of the evidence that existed at the time, was one that he should be taken to have given knowing the consequences of making that plea. Judge, the evidence of the adult pornography site not being in existence, he didn't know about that. He didn't know about these other witnesses. The release was led to believe they weren't available or had nothing to offer. The idea that the case seemed more hopeless to him until you see this new evidence, then you would think, if he knew in all this, he would not have thought it was as hopeless as it was. Right. One thing, if he was told about that and then made a decision to plea, but it's another situation if he doesn't know about it. That's what undercuts the validity of the plea and makes it involuntary and unknowing. Thank you, Mr. Garrity. Thank you. Your Honor, may I please support Randall Crum on behalf of the government? In hearing my brother argue, I don't hear any argument, really, that the initial decision to deny the motion of withdrawal was correct based on what information the court had then. The focus, rather, is on the renewed motion filed later after a memorandum order had already issued on the first one providing additional information, and the argument is that that was an abuse of discretion. It is our position it's properly viewed as a motion for reconsideration under that abuse of discretion would be the standard, both for granting it and for granting a hearing. I'm not sure I entirely agree that there are six clear requests for a hearing, but even assuming that there were, that the motion for reconsideration did include a clear request, I think it could have been reasonably denied. And probably the most important reason is that there wasn't the kind of, there's a suggestion there was a blockbuster information in the motion for reconsideration. Had there actually been that kind of information, a third party that said, submitting an affidavit, yes, I did it, or I was there, somebody directly could comment on the events in question, that might have raised a question about whether the court really did have to then investigate and hear it. But that's not what the additional information was. If you read through the things that are cited, essentially you have the only person who comes close to sort of contradicting the facts is the mother, and even then only by inference in suggesting primarily that she heard the dogs barking, she got up, her son had just arrived thereafter, the implication being he didn't have time to go inside and get on the computer. But even she doesn't say specifically that, she says she heard dogs barking and got up and the sequence of events is somewhat implicit. Everyone else's affidavit's information they submit is primarily just general information that the house was decrepit, that he didn't live there all the time. This is the kind of information that the district court already had and had found insufficient  he admitted to, both in his confession and again at the change of plea hearing. And I think that the court was very reasonable in doing that, especially because as we pointed out several times during these proceedings, focusing solely on that date is problematic because that's not the only date on which relevant events occurred. Continuing to submit motions talking about, especially indirectly, that he might not have been at a particular time or without addressing any of the other information that tied him to it, including the phone number, the earlier calls and communications, it could easily be, the court could easily have disregarded that information, especially, again, because it did not directly contradict it, but only suggested contrary inferences. So based on what the court had in the motion for reconsideration, there just wasn't the kind of information that compelled it to look yet again on a question that it already looked at and resolved thoroughly in a memorandum order earlier. Your Honor, if you don't have any further questions about it, we'll have the briefings with respect to the rest of the arguments. Thank you, Mr. Cohn.